# UNITED STATES DISTRICT COURT

for the

Southern District of Illinois

Jesus Sanchez

_____

_____

*Plaintiff/Petitioner(s)*

v.

Officer Kristofer Beshears, Sergeant Bradley, Lieutenant Welborn, John Doe Mental Health Worker, and John Doe Internal Affairs officer

*Defendant/Respondent(s)*

Case Number: 18-1328-DRH

(Clerk's Office will provide)

☒ CIVIL RIGHTS COMPLAINT
pursuant to 42 U.S.C. §1983 (State Prisoner)

☐ CIVIL RIGHTS COMPLAINT
pursuant to 28 U.S.C. §1331 (Federal Prisoner)

☐ CIVIL COMPLAINT
pursuant to the Federal Tort Claims Act,
28 U.S.C. §§1346, 2671-2680, or other law

## I.    JURISDICTION

**Plaintiff:**

A.    Plaintiff's mailing address, register number, and present place of confinement.

Jesus Sanchez #M38900
P.o. Box 99 - Pontiac, Il 61764

**Defendant #1:**

B.    Defendant Kristofer Beshears _____ is employed as

(a)      (Name of First Defendant)

Officer

(b)            (Position/Title)

with Menard Correctional Center

(c)      (Employer's Name and Address)

P.o. Box 1000 Menard, Il 62259

At the time the claim(s) alleged this complaint arose, was Defendant #1 employed by the state, local, or federal government? ☒ Yes   ☐ No

If your answer is YES, briefly explain: Worked as a Correctional officer for the Department of Corrections

**Defendant #2:**

C.   Defendant ___Bradley_____ is employed as

_____(Name of Second Defendant)_____

_____Sergeant_____
(Position/Title)

with _P.O. Box 1000 Menard, Il 62259_____
(Employer's Name and Address)

_____

At the time the claim(s) alleged in this complaint arose, was Defendant #2
employed by the state, local, or federal government?   ☒ Yes   ☐ No

If you answer is YES, briefly explain:
Worked as a Sergeant for the Department
of Corrections


**Additional Defendant(s) (if any):**

D.   Using the outline set forth above, identify any additional Defendant(s).

Defendant: Welborn

Lieutenant
(Position/Title)
P.O. Box 1000  Menard, Il 62259


☒ Yes

Worked as a Lieutenant for the
Department of Corrections

II.   PREVIOUS LAWSUITS

    A.   Have you begun any other lawsuits in state or federal court relating to your imprisonment?                    ☐ Yes    ☒ No

    B.   If your answer to "A" is YES, describe each lawsuit in the space below.  If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper using the same outline.  <u>Failure to comply with this provision may result in summary denial of your complaint.</u>

        1.   Parties to previous lawsuits:
            Plaintiff(s):


            Defendant(s):


        2.   Court (if federal court, name of the district; if state court, name of the county):

        3.   Docket number:

        4.   Name of Judge to whom case was assigned:

        5.   Type of case (for example: Was it a habeas corpus or civil rights action?):

        6.   Disposition of case (for example: Was the case dismissed?  Was it appealed?  Is it still pending?):


        7.   Approximate date of filing lawsuit:

        8.   Approximate date of disposition:

Additional Defendants

Continued from page 2

Defendant: John Doe
Position/Title: Mental Health Worker
Employer's Name                    ☒ Yes
and Address:    Menard Correctional Center
                P.o. Box 1000 Menard, Il 62259


Defendant: John Doe
Position/Title: Interal Affairs officer
Employer's Name                    ☒ Yes
and Address:    Menard Correctional Center
                P.o. Box 1000 Menard, Il 62259

(4)

III.   GRIEVANCE PROCEDURE

A.   Is there a prisoner grievance procedure in the institution? ☒ Yes    ☐ No

B.   Did you present the facts relating to your complaint in the prisoner grievance procedure?                    ☒ Yes    ☐ No

C.   If your answer is YES,
1.   What steps did you take?

I was transferred from Menard to Pontiac — grievance was filed with Administrative Review Board.

2.   What was the result?

denied

D.   If your answer is NO, explain why not.

E.   If there is no prisoner grievance procedure in the institution, did you complain to prison authorities?                    ☐ Yes    ☐ No

F.   If your answer is YES,
1.   What steps did you take?

2.   What was the result?

G.   If your answer is NO, explain why not.

H.   Attach copies of your request for an administrative remedy and any response you received.  If you cannot do so, explain why not.

## IV.   STATEMENT OF CLAIM

A.   State here, as briefly as possible, when, where, how, and by whom you feel your constitutional rights were violated.  Do not include legal arguments of citations.  If you wish to present legal arguments or citations, file a separate memorandum of law.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  If your claims relate to prison disciplinary proceedings, attach copies of the disciplinary charges and any disciplinary hearing summary as exhibits. You should also attach any relevant, supporting documentation.

1. On October 27, 2016, plaintiff Jesus Sanchez was incarcerated at the Menard Correctional Center during the events described herein this complaint.

2. Plaintiff was confined in the Menard Protective Custody Unit without a cell mate.

3. At around 10:30 a.m. plaintiff was notified that he would be getting a cellmate by C/o Kristofer Beshears.

4. Inmate Lamont Brown also known as "LB" was moved into the cell with plaintiff.

See attached pages

V.    REQUEST FOR RELIEF

State exactly what you want this court to do for you.  If you are a state or federal prisoner and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records, or parole), you must file your claim on a habeas corpus form, pursuant to 28 U.S.C. §§ 2241, 2254, or 2255.  Copies of these forms are available from the clerk's office.

100,000 in Compensatory damages from each named Defendant and 100,000 in punitive damages from each named Defendant.

VI.   JURY DEMAND (*check one box below*)

The plaintiff ☑ does ☑ does not request a trial by jury.

## DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

I certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11 may result in sanctions.

Signed on: __06 - 27 2018__
                (date)

__700 W Lincoln Street__
        Street Address

__Pontiac  IL  61764__
       City, State, Zip

_____
Signature of Plaintiff

__Jesus Sanchez__
        Printed Name

__M - 38900__
    Prisoner Register Number

_____
Signature of Attorney (if any)

(Rev. 7/2010)

6

5. Prior to Mr. Brown being moved into the cell with plaintiff, Mr. Brown's last cellmate notified C/o Kristofer Beshears multiple times of Mr. Brown's bizarre behavior and requested a different cellmate due to safety concerns.

6. Before moving into the cell with plaintiff, Mr. Brown was located two cell away from where plaintiff was being housed. Plaintiff could hear Mr. Brown violently arguing with himself.

7. Mr. Brown has a history of mental health problems and is categorized by the Illinois Department of Corrections as being seriously mentally ill, also known as "SMI".

8. Mr. Brown has a history of attacking his cellmates.

9. On a prior occasion Mr. Brown

-7-

attacked one of his cellmates for no apparent reason while his cellmate was using the bathroom.

10. At the time Mr. Brown was moved into the cell with plaintiff, plaintiff told C/o Kristofer Beshears that Mr. Brown should not have a cellmate due to his mental health problems and erratic behavior. But he was still moved into the cell with plaintiff.

11. An hour after Mr. Brown had been in the cell with plaintiff, he began talking to himself. At first for several minutes, then as time went on, he talked for longer periods.

12. Mr. Brown's conversations with himself became volatile in nature and he eventually began punching, kicking and yelling at the wall.

-8-

13. The following day Mr. Brown got up and urinated in the toilet and began to mix/stir it with his finger.

14. Plaintiff asked Mr. Brown what he was doing and Mr. Brown responded, "there are demons everywhere I need to cleanse the cell".

15. Mr. Brown would also urinate in multiple cups and would keep them next to his bed. According to Mr. Brown they were to "keep the bad spirits away".

16. The stench of urine was all over the cell and plaintiff felt nauseated.

17. Plaintiff notified C/o Kristofer Beshears that he did not feel safe living with somebody so mentally unstable.

18. C/o Kristofer Beshears responded, "let me see what I could do" but nothing was ever done.

—9—

19. Plaintiff sent multiple kites to Internal Affairs, Placement office, cellhouse Lieutenant Welborn, cellhouse Sergeant Bradley and the cellhouse Major, but nobody responded back.

20. Plaintiff was seen by a mental health staff worker (John Doe) and plaintiff let him know about his safety concerns regarding living with Mr. Brown. The mental health staff worker responded by saying "let me see what I can do." However, nothing was ever done.

21. As the days went on the plaintiff continued to urge the staff to move Mr. Brown, due to his mental health instability but nothing was ever done.

22. On the fourth day of Brown living in the cell with plaintiff, when plaintiff came back from the yard, plaintiff brought C/o Kristofer Beshears to the cell so he could smell the urine and see how

—10—

Mr. Brown was behaving.

23. When plaintiff arrived with C/o Kristofer Beshears, Brown was facing the wall with his forehead touching the wall having a conversation with the wall. C/o Beshears simply shake his head and walked away.

24. On the fifth day, someone from Internal Affairs walked by the cell and plaintiff stopped him (John Doe). Plaintiff expressed to him that he was in fear for his life "living in the cell with a crazy person".

25. The Internal Affairs officer who's name plaintiff does not know, told plaintiff he would look into the situation. But he never came back.

26. Brown heard me talking to the Internal Affairs officer and stated "stop telling on me".

—11—

27. C/o Kristofer Beshears made his routine rounds and plaintiff also expressed his safety concerns again.

28. Brown told C/o Beshears "if you don't move this motherf_____ somebody is going to die in this motherf_____!"

29. After C/o Beshears left, Brown got out of his bed and punched this plaintiff several times in the face, causing plaintiff's eye and lip to swell. Plaintiff wrestled Brown down to the floor and started choking him. Staff arrived and ordered plaintiff to stop. Plaintiff did not stop choking Brown because plaintiff was to scared to let go of Brown fearing Brown would attack him again. Staff sprayed plaintiff with pepper spray and handcuffed him and took him and Brown to segregation confine- ment.

30. The whole incident would have never occurred if C/o Beshears would have taken Brown to segregation for threats and intimidation when he threaten plaintiff in front of him.

31. When plaintiff was released from segregation he was ordered to move back in the cell with Brown — even though both had went to segregation for fighting.

32. Plaintiff notified staff that he had just went to segregation for fighting Brown.

33. Plaintiff was moved to a different cell with a different cellmate.

34. A few days after plaintiff got out of segregation he was transferred to the Pontiac Correctional Center, Protective Custody Unit.

35. A few days after arriving at Pontiac, plaintiff filed a grievance and sent it directly to Illinois Department of Corrections Administrative Review Board.

36. Plaintiff exhausted all administrative remedies.

37. Defendant Kristofer Beshears is being sued in his individual capacity, for acting deliberately indifferent to plaintiff's constitutional rights secured under the eighth amendment. Defendant Beshears was repeatedly informed of the threating unstable mental conditions of plaintiff's cellmate Brown. Plaintiff expressed several times to Defendant Beshears that he did not feel safe in the cell with Brown because of Brown's poor mental health. Defendant Beshears failed to protect and separate plaintiff after hearing Brown threaten to kill plaintiff. And as a direct result of that, plaintiff was attacked

—14—

by inmate Brown shortly after Defendant
Beshears left the gallery.

38. Defendant Lieutenant Welborn is
being sued in his individual capacity,
for acting deliberately indifferent to
plaintiff's constitutional rights secured
under the eighth amendment. Plaintiff
wrote Defendant Welborn requesting that
he separate plaintiff from Brown because
of Brown's mental conditions and because
plaintiff feared for his safety. And because
Defendant Welborn failed to separate
plaintiff from Brown, plaintiff was
attacked by Brown. Defendant Welborn
was aware of Brown's poor mental
health and violent nature towards his
cellmates, because Defendant Welborn was
the cellhouse Lieutenant and had heard
these complaints before from other inmates.

39. Defendant Sergeant Bradley is
being sued in his individual capacity,
for acting deliberately indifferent to

−15−

plaintiff's constitual eighth amendment rights. Plaintiff wrote and talked to Defendant Bradley about inmate Brown's mental health conditions. Plaintiff asked Bradley to help him get moved because he did not feel safe living in the cell with inmate Brown. Defendant Bradley did nothing to help plaintiff, and as a direct result plaintiff was attacked by inmate Brown.

40.   Defendant John Doe mental health worker is being sued in his individual capacity, for acting deliberately indifferent to plaintiff's constitutional eighth amendment rights. Plaintiff expressed his safety concerns regarding living in the cell with Mr. Brown to John Doe and asked him if he could help plaintiff get separated from inmate Brown. John Doe mental health worker did nothing to help plaintiff, and as a direct result, plaintiff was attacked by inmate Brown.

41. Defendant John Doe Internal Affairs Officer, is being sued in his individual capacity, for acting deliberately indifferent to plaintiff's eighth amendment constitutional rights. Plaintiff stopped John Doe and told him that he did not feel safe in the cell with inmate Brown. John Doe did nothing to help plaintiff get separated from inmate Brown. And as a direct result of failing to help plaintiff get separated from inmate Brown, plaintiff was attacked by inmate Brown.

**Offender Disciplinary Report**

Date: 10-31-16

**Type of Report:** [X] Disciplinary  [ ] Investigative

Menard C.C.
Facility

Offender Name: Sanchez                          ID #: M38900

Observation Date: 10-31-16   Approximate Time: 10⁵⁸ approx. [ ]am [X]pm   Location: North Lowers 4 gallery

Offense(s): DR 504: 301 Fighting, 403 Disobeying a direct order

Observation: (NOTE: Each offense identified above must be substantiated.) On the above date and approx. time while making a routine gallery check this B/o approached cell 4-15 in the North Lowers cellhouse and witnessed I/m Sanchez m38900 on the floor choking I/m Brown 212187. This B/o called cellhouse SGT. Bradley to 10-25 cell 4-15. SGT Bradley arrived and gave I/m Sanchez several direct orders to let go of I/m Brown and cuff up. I/m Sanchez refused. SGT. Bradley used OC pepper spray. I/m Sanchez and I/m Brown stopped fighting and cuffed up. Lt. Welborn arrived at the cell and removed both inmates from the cell and escorted them to HCU with no further incident. Chain of command notified. I/m Brown and I/m Sanchez ID'ed by ID card and cellhouse map. EOR

Witness(es): McClanahan 7610, SGT Bradley 3565, Lt. Welborn 4173

[ ] Check if Offender Disciplinary Continuation Page, DOC 0318, is attached to describe additional facts, observations or witnesses. [ ]am [ ]pm

Boshers, Kristofer — 6862      K Bushers      10-31-16   12⁰⁰ approx [ ]am [X]pm
Reporting Employee (Print Name)   Badge #        Signature              Date        Time

---

**Disciplinary Action:**

**Shift Review:** [X] Temporary Confinement   [ ] Investigative Status   Reasons: Nature of Offense

Mr. Hughes   573                                        10/2/16
Printed Name and Badge #          Shift Supervisor's Signature          Date
                                  (For Transition Centers, Chief Administrative Officer)

**Reviewing Officer's Decision:** [X] Confinement reviewed by Reviewing Officer   Comment: I Concur

[X] Major Infraction, submitted for Hearing Investigator, if necessary and to Adjustment Committee

[ ] Minor Infraction, submitted to Program Unit

MAJ J. Custon   531                                     10-31-16
Print Reviewing Officer's Name and Badge #    Reviewing Officer's Signature    Date

[X] Hearing Investigator's Review Required (Adult Correctional Facility Major Reports Only).        1/3

Print Hearing Investigator's Name and Badge #    Hearing Investigator's Signature    Date

**Procedures Applicable to all Hearings on Investigative and Disciplinary Reports**

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

**Procedures Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports**

You may ask that witnesses be interviewed and if necessary and relevant, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

[ ] Check if offender refused to sign   X No Pen
                                         Offender's Signature              ID#

Cornstubble                         12592            J. Corner
Serving Employee (Print Name)        Badge #         Signature

10/31/16              7:35            [ ]am [X]pm
Date Served          Time Served

[ ] I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

_____                           _____
Offender's Signature                               ID#

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**(Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing)**

_____   _____   _____
Date of Disciplinary Report   Print offender's name   ID#

I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date

| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |
|---|---|---|---|
| | | | |

Witness can testify to _____

| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |
|---|---|---|---|
| | | | |

Witness can testify to _____

Distribution   Master File
               Offender
               Facility (2)

DOC 0317 (Rev 2/2...)

## STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS
### ADJUSTMENT COMMITTEE
### FINAL SUMMARY REPORT

| | | |
|---|---|---|
| Name: SANCHEZ, JESUS | IDOC Number: M38900 | Race: HSP |
| Hearing Date/Time: 11/7/2016  09:12 AM | Living Unit: PON-SP-08-09 | Orientation Status: N/A |
| Incident Number: 201601825/1 - MEN | Status: Final | |

| Date | Ticket # | Incident Officer | Location | Time |
|---|---|---|---|---|
| 10/31/2016 | 201601825/1-MEN | BESHEARS, KRISTOFER | MENARD CORRECTIONAL CENTER | 10 50 AM |

| Offense | Violation | Final Result |
|---|---|---|
| 301 | Fighting | Guilty |
| | Comments:brown | |
| 403 | Disobeying A Direct Order | Guilty |

| Witness Type | Witness ID | Witness Name | Witness Status |
|---|---|---|---|
| No Witness Requested | | | |

**RECORD OF PROCEEDINGS**
Inmate pled guilty

**BASIS FOR DECISION**
Based on the observation of the reporting employee officer observed Inmate Sanchez on the floor choking Inmate Brown R12187. Inmate was given several direct orders to let go of Inmate Brown and cuff up and Inmate refused to comply. Inmate ID by OTS sheet and state ID card.

**DISCIPLINARY ACTION** *(Consecutive to any priors)*

| RECOMMENDED | FINAL |
|---|---|
| 1 Months C Grade | 1 Months C Grade |
| 1 Months Segregation | 1 Months Segregation |
| 1 Months Commissary Restriction | 1 Months Commissary Restriction |
| Basis for Discipline:nature of offnese | |

**Signatures**
**Hearing Committee**

| | | | |
|---|---|---|---|
| BROOKMAN, KENT E  - Chair Person | Signature | 11/07/16 Date | WHI Race |
| JONES, ANTHONY B | Signature | 11/07/16 Date | BLK Race |

Recommended Action Approved

**Final Comments:** N/A

JEFFREY A HUTCHINSON / DHL  11/17/2016       11/17/16
Chief Administrative Officer        Signature        Date

The committed person has the right to appeal an adverse decision through the grievance procedure established by Department Rule 504 Subpart F.

11/28/16

Employee Serving Copy to Committed Person        When Served - - Date and Time

25

Bruce Rauner
Governor



John Baldwin
Acting Director

### The Illinois Department of Corrections

1301 Concordia Court, P.O. Box 19277 • Springfield, IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

April 18, 2017

Jesus Sanchez
Register No.  M38900
Pontiac Correctional Center

Dear Mr. Sanchez:

This is in response to your grievance received on December 1, 2016, regarding a disciplinary report dated October 31, 2016, which was alleged to have occurred at Menard Correctional Center.  This office has determined the issue will be addressed without a formal hearing.

This office has reviewed your grievance dated November 27, 2016 regarding the above issued report and claims that had Security Staff at Menard listened to your complaints about Offender Brown, this incident would not have occurred.

This office reviewed the disciplinary report citing you and Brown for fighting, along with the corresponding Adjustment Committee Summary (201601825/1-MEN).

Based on a total review of all available information and a compliance check of the procedural due process safeguards outlined in DR504, this office is reasonably satisfied the offender committed the offenses and recommends the grievance and relief requested be denied. Records reflect both Sanchez and Brown have a similar disciplinary history and were housed in the same cell for five (5) days. With whom an offender is housed with is a no merit issue. Claims against staff are not substantiated.

FOR THE BOARD: *Sherry Benton*

Sherry Benton
Administrative Review Board
Office of Inmate Issues

CONCURRED: *John R. Baldwin*

John R. Baldwin
Acting Director

cc:   Warden, Pontiac Correctional Center
Jesus Sanchez, Register No. M38900

---

*Mission: To serve justice in Illinois and increase public safety by promoting positive change in offender behavior, operating successful reentry programs, and reducing victimization.*

*www.illinois.gov idoc*

26