IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JESUS SANCHEZ, # M-38900, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18-cv-1328-DRH |
| | ) |
| KRISTOFER BESHEARS, | ) |
| SERGEANT BRADLEY, | ) |
| LIEUTENANT WELBORN, | ) |
| JOHN DOE (Mental Health Worker), | ) |
| and JOHN DOE (Internal Affairs Officer), | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff, currently incarcerated at Pontiac Correctional Center ("Pontiac"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claims arose while he was confined at Menard Correctional Center ("Menard"). Plaintiff claims that Defendants failed to protect him from an attack by his cellmate, despite Plaintiff's reports of his safety concerns. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a

1

defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that Plaintiff's claims survive

threshold review under § 1915A.

## The Complaint

Plaintiff alleges that on October 27, 2016, while he was being held in protective custody at Menard without a cellmate, C/O Beshears told him that another inmate would be moved into Plaintiff's cell. (Doc. 1, p. 6). Inmate Brown, who had been in the location 2 cells away from Plaintiff, was placed in Plaintiff's cell. (Doc. 1, p. 8). Plaintiff was familiar with Brown, having been warned by Brown's former cellmate (who had requested a change of cellmate due to concerns about his safety with Brown) that Brown displayed bizarre behavior. (Doc. 1, p. 8). Plaintiff himself had heard Brown "violently arguing with himself" while in the nearby cell. *Id.* Plaintiff asserts that Brown has been classified by the Illinois Department of Corrections as "seriously mentally ill" due to his history of mental health problems, and that Brown has a history of attacking his cellmates. *Id.*

When Brown was moved into Plaintiff's cell, Plaintiff told Beshears that Brown should not have a cellmate because of his mental health problems and erratic behavior, but Beshears left Brown in Plaintiff's cell. (Doc. 1, p. 9). Shortly after Brown was moved into Plaintiff's cell, Brown began talking to himself, with his "conversations" becoming more volatile and then escalating to Brown punching, kicking, and yelling at the wall. *Id.*

The next day, Brown told Plaintiff that he needed to "cleanse the cell" of "demons" after Plaintiff questioned why Brown was stirring the toilet bowl with

3

his finger after urinating in it. (Doc. 1, p. 10). Brown urinated into multiple cups that he kept next to his bed to "keep the bad spirits away." *Id.* The stench of urine made Plaintiff nauseated. Plaintiff again notified Beshears that he did not feel safe with the mentally unstable Brown in his cell. Beshears said he would "see what [he] could do," but took no action. *Id.*

Plaintiff sent multiple "kites" to Lt. Welborn, Sgt. Bradley, the cellhouse major, and Internal Affairs, but got no response. (Doc. 1, p. 11). Plaintiff spoke with the John Doe Mental Health Worker about his safety concerns with Brown. This John Doe said he would see what he could do, but again, nothing was done. *Id.* Each day, Plaintiff continued asking officials to move Brown, but no action was taken.

On the fourth day of Brown being in the cell, Plaintiff returned from yard and brought Beshears to the cell so he could smell the urine and observe Brown's behavior. (Doc. 1, pp. 11-12). Beshears saw Brown with his forehead against the wall, having a conversation with the wall. Beshears shook his head and walked away. (Doc. 1, p. 12).

On the fifth day, Plaintiff stopped the John Doe Internal Affairs Officer as he walked by the cell, and told him that Plaintiff was in fear for his life "living in the cell with a crazy person." *Id.* The John Doe Internal Affairs Officer told Plaintiff he would look into the situation, but he never returned. Brown overheard this conversation, and told Plaintiff to "stop telling on me." (Doc. 1, p. 12).

When Beshears made his rounds, Plaintiff repeated his safety concerns. Brown then told Beshears, "if you don't move this mother___ somebody is going to die in this mother___!" (Doc. 1, p. 13). Beshears left, and after he was gone, Brown got out of bed and punched Plaintiff several times in the face, injuring his eye and lip. Plaintiff wrestled Brown to the floor and started choking him. Staff arrived and ordered Plaintiff to stop, but he did not stop out of fear that Brown would attack him again if he let go. Officers sprayed Plaintiff with pepper spray, cuffed him, and took both Plaintiff and Brown to segregation. (Doc. 1, pp. 13, 19-20).

When Plaintiff was released from segregation, he was at first ordered to move back into a cell with Brown, but was placed with a different cellmate after he protested that he was in segregation for fighting Brown. (Doc. 1, p. 14). A few days later, Plaintiff was transferred to Pontiac's protective custody unit.

Plaintiff asserts a deliberate indifference claim against Beshears, for failing to protect Plaintiff despite Plaintiff's repeated complaints that Brown posed a threat to his safety, and after Beshears heard Brown threaten to kill Plaintiff. (Doc. 1, pp. 15-16). Plaintiff advised Welborn in writing of his safety concerns, and Welborn was allegedly aware of Brown's mental health problems and violent behavior because Welborn had heard complaints from other inmates in the cellhouse. (Doc. 1, p. 16). Plaintiff wrote and spoke to Bradley about his safety concerns, but Bradley failed to act. (Doc. 1, p. 17).

Plaintiff seeks compensatory and punitive damages for the violation of his

rights. (Doc. 1, p. 7).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to characterize the *pro se* action in a single count. The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of this count does not constitute an opinion as to its merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment claim against Beshears, Bradley, Welborn, John Doe Mental Health Worker, and John Doe Internal Affairs Officer, for failing to protect Plaintiff from the attack by his cellmate.

Accepting Plaintiff's allegations as true, Count 1 shall proceed for further review against all Defendants. However, Plaintiff must identify the Unknown (John Doe) Defendants by name before the Complaint may be served on them.

### Count 1 – Failure to Protect

Plaintiff told Beshears on several occasions that Brown's behavior made him fear for his safety. Beshears not only observed some of this behavior himself, he heard Brown directly threaten Plaintiff's life. These facts support Plaintiff's deliberate indifference claim against Beshears. *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) ("prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners") (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006); *Pope v. Shafer*, 86 F.3d

90, 92 (7th Cir. 1996) (plaintiff must show that he complained to prison officials about a specific, impending, and substantial threat to his safety). Despite Plaintiff's complaints and Beshears' own observations, Beshears took no action to protect Plaintiff from attack – thus satisfying the subjective element of an Eighth Amendment claim. *See Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) ("Once prison officials know about a serious risk of harm, they have an obligation to take reasonable measures to abate it.") (internal quotation omitted); (*Sanville v. McCaughtry*, 266 F.3d 724, 733-34 (7th Cir. 2001) (defendant had to know that there was a substantial risk that those who attacked Plaintiff would do so, yet failed to take any action). Plaintiff may therefore proceed with his claim against Beshears.

Similarly, Plaintiff alleges that he spoke to Bradley, as well as wrote to him about his safety concerns arising from Brown's behavior and mental health condition. Plaintiff also talked to the John Doe Mental Health Worker and John Doe Internal Affairs Officer about Brown. Plaintiff does not allege that he had face-to-face contact with Welborn, but he wrote a request to Welborn asking to be separated from Brown because of his safety concerns. Plaintiff has adequately pled that he placed each of these individuals on notice that he feared for his safety while sharing a cell with Brown, but none of these Defendants took any action to mitigate the risk of harm to Plaintiff. Accordingly, Plaintiff may also proceed with his claim in **Count 1** against Bradley, Welborn, and the John Doe Defendants.

7

### Identification of Unknown Defendants

Plaintiff shall be allowed to proceed with his claims in Count 1 against the John Doe Mental Health Worker and John Doe Internal Affairs Officer. However, these Defendants must be identified with particularity before service of the Complaint can be made on them. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, Plaintiff may direct his discovery requests aimed at identifying these John Does to the other Defendants. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of the John Doe Mental Health Worker and the John Doe Internal Affairs Officer are discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

### Disposition

The Clerk of Court shall prepare for Defendants **BESHEARS, BRADLEY,** and **WELBORN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a

Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on Defendants **JOHN DOE MENTAL HEALTH WORKER** or **JOHN DOE INTERNAL AFFAIRS OFFICER** until such time as Plaintiff has identified them by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a

plan for discovery aimed at identifying the unknown defendants with particularity.

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. See 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Judge Herndon
2018.07.24
16:47:32 -05'00'

**United States District Judge**

10